**RECEIVED**

DEC 1 4 2010

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

MARINE SHALE PROCESSORS, INC.              CIVIL ACTION NO. 09-0353

VERSUS                                                       JUDGE DOHERTY

WESTON SOLUTIONS, INC., ET AL.            MAGISTRATE JUDGE HILL

## MEMORANDUM RULING

Pending before this Court is the Report and Recommendation issued by the magistrate judge on the Motion for Summary Judgment [Doc. 39], filed by defendant Weston Solutions, Inc. ("Weston"), recommending the Weston's motion be granted, and that this action be dismissed with prejudice. The motion is opposed by plaintiff Marine Shale Processors, Inc. ("MSP") [Doc. 44]. For the following reasons, the recommendations of the magistrate judge are AFFIRMED AND ADOPTED, with the following clarifications noted.

**I.      Factual and Procedural Background**

The instant lawsuit was filed by MSP against Weston seeking damages in excess of $2,000,000.00 for the loss of, and damage to, copper wiring and equipment at the MSP facility located in Amelia, Louisiana. It is undisputed MSP's facility has not been in operation since 1996, following court-ordered closure. Pursuant to a Stipulation of Settlement and Judgment, in an action by the United States Department of Justice and the State of Louisiana against MSP and its owner, John Kent, Sr., remediation of contamination at the facility was to be performed by the Louisiana Department of Environmental Quality ("LDEQ"). LDEQ requested bids from contractors to perform the remedial clean-up work. Weston, the low bidder, was awarded the contract. Pursuant to the

contract between LDEQ and Weston, Weston was to disassemble, demolish, decontaminate, and dispose of thirteen tanks at the facility and to treat and dispose of any contaminated waste material in the tanks.

Weston began work in September 2007 and the work was completed in March 2008, at which time Weston departed the facility.  On November 4, 2008, MSP argues MSP's facility caretaker, Sid Moffett, purportedly discovered copper wiring at the facility was missing and a substantial amount of equipment[1] at the facility was damaged or missing.  Mr. Moffett reported the alleged theft to the St. Mary Parish Sheriff's Office on November 5, 2008.   The incident was investigated by the Sheriff's Office; no arrests were made, nor has the person responsible for the theft or damage been identified.

On March 6, 200, MSP filed the instant lawsuit against Weston, alleging two counts, as follows:

**COUNT ONE**

[ . . . ]

10.

Weston breached the obligations contained in its contract to protect Plaintiff's property. Plaintiff is a third party beneficiary of the obligation of Weston and entitled to be reimbursed for all losses and damages as a result of said breach.  The value of Plaintiff's property that was lost or damaged due to the acts, omissions and breaches of contract by Weston exceed $2 million.

**<u>COUNT TWO</u>**

Weston was negligent in is supervision and direction of persons on the premises, including its own employees and employees of subcontractors, and as a result of Weston's negligence, Plaintiff suffered the loss or and damage to its property.

---

[1] The specific equipment that allegedly was lost or damaged is not identified in plaintiff's Complaint.

In its motion for summary judgment, Weston seeks dismissal of plaintiff's claims on two grounds: (1) MSP is not a third-party beneficiary of the contract between LDEQ and Weston, and therefore, MSP's breach of contract claim should be dismissed; and (2) Weston was not negligent in its supervision of its employees and/or subcontractors and is entitled to summary judgment on plaintiff's negligent supervision claim.

**II.     The Magistrate Judge's Report and Recommendation**

With respect to MSP's breach of contract claim, the magistrate judge construed Section 4.1 of the contract between LDEQ and Weston to unambiguously limit the property covered by Section 4.1 to be the property that Weston used, or was to use, in accomplishing the objects of the contract. Therefore, the magistrate judge concluded Section 4.1 does not contain a stipulation *pour autri* in favor of MSP, such that MSP was a third party beneficiary under the contract.  Accordingly, the magistrate judge recommends dismissal of MSP's third party beneficiary breach of contract claim. With respect to MSP's negligent supervision claim, the magistrate judge concluded MSP failed to present sufficient evidence to establish the essential elements of its negligent supervision claim. Consequently, the magistrate judge recommends dismissal of MSP's negligent supervision claim. MSP objects to both findings.

**III.     Standard of Review**

Pursuant to 28 U.S.C. § 636(b)(1), "[a] judge of the court shall make a *de novo* determination of those portions of the [magistrate judge's] report [and recommendation] or specified proposed findings or recommendations to which objection is made."  Section 636(b)(1) further states "[a] judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter

to the magistrate judge with instructions." Therefore, this Court makes a *de novo* review of the portions of the magistrate judge's report to which the defendants object. *See Hernandez v. Estelle*, 711 F.2d 619, 620 (5th Cir. 1983).

**IV.    Law and Analysis**

    **1.    Breach of Contract Claim**

    The disputed provision of the contract is as follows:

    4.1    General Site Management

    The Contractor [Weston] shall be responsible for the protection and safety of all work, materials, equipment, and other property on the site against vandals and other unauthorized persons during mobilization, on-site work, and demobilization. No claims shall be made against LDEQ by reason of any act of an employee or trespasser. All damage, injury or loss to any property caused directly or indirectly, in whole or in part, by the Contractor shall be remedied by the Contractor at his expense.

    The dispute between the parties is this: MSP argues Section 4.1 contains a stipulation *pour autri*, whereby responsibility for any damage to, or loss of, property at the facility owned by MSP occasioned by anyone, including Weston employees, vandals and/or unauthorized persons, was assumed by Weston. Weston argues Section 4.1 does not contain a *stipulation pour autri* and that Section 4.1 was intended solely to require that Weston be responsible for protecting its *own* property from loss or damage by vandals or unauthorized persons.

    The magistrate judge ruled in favor of Weston, concluding Section 4.1 does not contain a *stipulation pour autri* in favor of MSP and that Section 4.1 was intended solely to require that Weston be responsible for protecting its *own* property from loss or damage. In its Objections, MSP argues the magistrate judge erred in so concluding.

    This Court will not reiterate the very thorough and detailed analysis undertaken by the

-4-

magistrate judge in his Report.  After this Court's *de novo* review of Section 4.1 as well as other

provisions of the contract, and the arguments of the parties, this Court concludes the magistrate judge

correctly found Section 4.1 does not contain a *stipulation pour autri* in favor of MSP for the reasons

noted by the magistrate judge and the failure of MSP to establish the three jurisprudential requisites

have been met.  Accordingly, the finding of the magistrate judge on this aspect of Weston's motion

for summary judgment is AFFIRMED.

   **2.      Negligent Supervision Claim**

         **a.      MSP's Evidence**

MSP argues Weston negligently supervised both its own employees and the employees of

Weston's subcontractors, which allowed these employees to steal a large amount of copper wire from

the facility, which resulted in other loss of, or damage to, other property belonging to MSP at the

facility.  In both its opposition to Weston's motion for summary judgment and again in its Objections

to the magistrate judge's Report and Recommendation, MSP presents the following "evidence" it

argues establishes Weston's negligent supervision of Weston's and other employees:

1.    The deposition testimony of a former manager of the MSP facility who testified that he toured the MSP facility immediately prior to the point at which Weston arrived and observed the facility to be intact, thus negating any allegation that the thefts and vandalism occurred prior to Weston's arrival.

2.    Photographs obtained by MSP through discovery which show Weston employees tearing down conduit and removing copper wire from the facility despite the fact that Weston's contract with LDEQ was clearly limited to the removal of 13 tanks and gave Weston's employees no authority whatsoever to remove copper wire from the facility.

3.    Photographs obtained by MSP through discovery which show a Weston employee cutting the back off of a conduit elbow to remove copper wire from it.  This activity took place in an area of the plant in which no tank are or were ever located.

-5-

4.      Photographs obtained by MSP through discovery which show conduit intact while Weston was present at the facility (and actually show Weston personnel in the background as a means of dating these photographs) coupled with other photographs of the facility taken by LDEQ immediately after Weston left the facility which show that conduit at the facility has been cut through to remove copper wire and is being held together with pipe clamps after Weston left.

5.      The deposition testimony of a Master Electrician who worked at the MSP plant and who stated that, based on his personal experience in installing copper wire at the plant, pulling the thousands of feet of heavy copper wire that were stolen from the facility out of the conduit in which it was housed was a massive undertaking that could not have been accomplished without the sort of heavy equipment that Weston had on site.

6.      The deposition testimony of an employee of a neighboring facility stating that he would have immediately noticed and become suspicious if anyone other than Weston began moving heavy equipment to and from the MSP facility but that Weston was able to do so without arousing suspicion due to its contract with LDEQ.

7.      The deposition testimony of the Risk Manager and guards from a neighboring facility stating that they observed men moving about the MSP site at night while Weston was there and using the work trailer that Weston had placed on site despite the fact that Weston claims it was only performing work during the day time hours at the MSP facility.[2]

8.      Copies of the log sheets maintained by guards from a neighboring facility documenting the after hours presence of men at the MSP site who were coming and going from a work trailer that Weston had placed on site.

9.      The deposition testimony of Weston's own expert who stated that it would have taken several months to remove the massive amount of copper wire that was stolen from the MSP facility coupled with the affidavit of the MSP facility's caretaker who swears that he inspected the facility regularly and never observed anyone other than Weston there for that length of time.

10.     The fact that Weston employees are depicted tearing down conduit and pulling valuable copper wire from the conduit in photographs obtained by

---

[2] In the Report and Recommendation, there is reference to certain evidence presented by MSP that the magistrate judge did not consider because the evidence was not "in the record."  It is unclear to this Court whether the evidence in Paragraphs 7 and 8 is evidence that was considered or not considered.  However, this Court checked the referenced testimony and time logs submitted by MSP as evidence on this point and was able to locate this evidence in the record.  Therefore, to be clear, the evidence in Paragraphs 7 and 8 was considered by this Court.

> MSP through discovery coupled with the fact that Weston has not produced any receipts for the sale or salvage of copper wire, thus negating any argument that Weston employees had a legitimate basis for removing copper wire from the facility.

The magistrate judge considered the foregoing evidence and concluded MSP presented no evidence that Weston breached its duty of reasonable supervision.[3] To the contrary, the magistrate judge concluded the evidence submitted by Weston demonstrates the opposite. The magistrate judge concluded there is "no evidence that any Weston employee committed" the criminal action of stealing copper wire and vandalizing MSP's property and thus, plaintiff could not carry its burden on its negligent supervision claim. In so concluding, the magistrate judge relied, in part, on the fact that the criminal investigation conducted by the St. Mary Parish Sheriff's Office did not result in the arrest of any Weston employee. The magistrate judge further concluded even if the Court were to find a breach of Weston's *duty* of reasonable supervision, MSP cannot satisfy the *causation* element. In concluding the foregoing, the magistrate judge heavily relied on the fact that there was a seven-month time lapse from the time Weston left the facility until the time the claimed losses and damages were allegedly discovered and reported. Finally, the magistrate judge stated he reviewed three photographs in his analysis: (1) a photograph depicting a Weston employee cutting a conduit; (2) a photograph depicting intact conduit; and (3) a final photograph depicting the same area where the

---

[3] The magistrate judge properly noted a claim against an employer for the torts of its employees, based on the employer's alleged direct negligence in hiring, retaining, or supervising the employee, is generally governed by the same duty-risk analysis used for all other negligence cases in Louisiana. *Griffin v. Kmart Corp.*, 776 So.2d 1226 (La. App. 5th Cir. 2000), *citing Jackson v. Ferrand*, 658 So.2d 691, 698 (La. App. 4th Cir. 1994), *writ denied*, 659 So. 2d. 496 (La. 1995). A finding of liability in a negligence case requires proof of five elements: (1) proof that the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) proof that the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) proof that the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) proof that the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) proof of actual damages (the damages element). *Fowler v. Roberts*, 556 So. 2d 1, 4-5 (La. 1989). The duty owed in a negligent supervision case is the duty of reasonable supervision. *Doe ex rel. Doe v. DeSoto Parish School Board*, 907 So.2d 275, 280-81 (La. App. 2nd Cir. 2005).

conduit had been removed. Based on all the evidence presented by MSP, including the photographic evidence, the magistrate judge concluded this Court cannot infer Weston breached its duty of reasonable supervision. This Court reviews the magistrate judge's findings *de novo.*

As an initial matter, this Court notes the evidence presented by MSP to meet Weston's motion, overwhelmingly addresses only the loss of the copper wire. The evidence specifically does not address any other equipment or property of MSP that is alleged to have been lost or damaged, with the exception of the conduit. MSP argues Weston employees cut the conduit in order to remove (and then steal) the copper wire contained therein. Considering the foregoing, Weston's motion for summary judgment seeking dismissal of all claims by MSP against Weston for the loss of, or damage to, property – other than the conduit and the copper wire inside the conduit – is GRANTED, and those claims are DISMISSED WITH PREJUDICE.

With respect to the copper wire and the conduit, this Court first notes MSP begins its Objections with the following statement: "It is undisputed that significant thefts of copper wire and other valuable materials from the MSP facility occurred." The foregoing statement is, in fact, highly disputed by Weston and demonstrates the considerable overbreadth and overreaching engaged in by counsel for MSP throughout its briefing on the instant motion. With respect to the copper wire and the conduit, the Court concludes MSP overreaches in its arguments with respect to several categories of "evidence," and other categories of evidence are not material to this Court's analysis, as follows:

### Paragraph 2

In Paragraph No. 2, MSP presents "[p]hotographs obtained by MSP through discovery which show Weston employees tearing down conduit **and removing copper wire from the facility** despite the fact that Weston's contract with LDEQ was clearly limited to the removal of 13 tanks and gave

-8-

Weston's employees no authority whatsoever to remove copper wire from the facility." (emphasis added.)  This Court has reviewed the two photographs[4] submitted by MSP in this regard and concludes the photographs do not depict employees "tearing down conduit **and removing copper wire from the facility**. . ." Although the pictures that were provided to this Court are not clear, one photograph appears to show two men standing next to certain tubes, while the second photograph appears to depict the same area without the men or the tubes; neither depicts copper wire being removed from the facility.   Moreover, this Court further notes the accompanying deposition testimony of Mr. Kelvin Bishop, who testified it was necessary to remove certain conduit in order to make room for an excavator, which was being used as a mixing bin.  Mr. Bishop further testified even if that conduit was not removed in order to make room for the excavator, the conduit would eventually have been removed to make room to facilitate the removal of a tank.[5]

Again, this Court notes, notwithstanding what the photos *might* depict, the photographs clearly **do not** depict individuals "*removing copper wire from the facility.*" (emphasis added.). Notwithstanding the fact that the foregoing photographs do not depict individuals "removing copper wire from the facility," one of the photographs does appear to depict Weston employees cutting conduit.  The accompanying deposition testimony explains the cutting and removal were required in order for Weston to do its work; MSP presents no *evidence* to dispute this sworn testimony. Rather, in response, in its Objections, MSP attaches the affidavit of Sidney Moffett, the caretaker

---

[4] This Court notes all of the photographs that were submitted by MSP in support of its arguments, and indeed, all photographs reviewed by this Court, were taken *by Weston* as part of the over 1,000 photos Weston took during the seven months it was on-site at the MSP facility *to record the progress of Weston's work under its contract with LDEQ.*

[5] *See* deposition of Kelvin Bishop, attached as Exhibit "E" to MSP's opposition to Weston's motion for summary judgment, Doc. 44, pp. 49 & 53.  Although a Weston employee, Mr. Bishop's role in this litigation has not been sufficiently explained to this Court.

of the MSP facility since 2004. Despite serving as caretaker of the facility for MSP, **Mr. Moffett acknowledges he was not present at the facility during late 2007 and early 2008 when Weston was performing its demolition work**. However, in his affidavit, Mr. Moffett attests one of the foregoing photographs – the photograph with the two men standing next to certain tubes – depicts "Weston employees tearing down conduit and removing copper wire from it,"[6] and Mr. Moffett attests there are no tanks in the location of this photograph and any tank that needed to be removed could have been removed without demolishing the conduit in the photograph. However, Mr. Moffet's affidavit addresses information of which he has no personal knowledge and does not *dispute* the testimony of Mr. Bishop.

Mr. Bishop, a Weston employee, testified it was necessary for Weston employees to cut conduit in the performance of its work under the contract; MSP's caretaker was not a party to the contract, and has admitted he was not present at the job site when work was being performed by Weston pursuant to that contract. Thus, this Court has question as to what, if any, relevance the Moffett affidavit might have to the specific factual question before the Court. Mr. Moffet is not in a position to *affirm* by way of his *own personal knowledge* what was or was not required pursuant to a contract to which he was not privy, or what was or was not done by Weston at a time and place he has admitted he was not present; thus, he lacks the requisite personal knowledge *to dispute the sworn testimony* of the on site Weston employee. Furthermore, the photograph, itself, does not, on its face, depict what MSP argues, i.e., Weston employees removing copper wire from the conduit, as Mr. Moffett attests. Rather, the photograph depicts two men standing next to certain tubes. What

---

[6] *See* Affidavit of Sidney Moffett, attached as Exhibit "B" to MSP's opposition to Weston's motion for summary judgment, at ¶11.

the men are actually doing is not clear. In this regard, Mr. Moffett overreaches as does MSP. Second, Mr. Moffett has acknowledged **he was not present at the job site from late 2007 to early 2008, when Weston was performing its work**. Thus, Mr. Moffett *is not in a position to attest to what Weston employees did or did not do;* Mr. Moffett, also, was not a party to the contract between Weston and LDEQ, nor, perhaps more importantly, did he perform any work for either party during the relevant time period. Therefore, **Mr. Moffett is not in a position to know what specific work Weston was required to do by way of contract, or what work Weston, in fact, did nor did not do, in order to perform its work under its contract with LDEQ**. Consequently, Mr. Moffett's questionable affidavit can not specifically *refute* the sworn testimony of Mr. Bishop, and as MSP has presented no other *evidence* to dispute that presented by Weston, Weston must prevail.

It is not lost on this Court that the photographs upon which MSP does rely, were **taken by Weston to memorialize its performance under the contract**. To embrace MSP's *argument* that those same photos memorialize Weston employees' deliberate theft, would have this Court infer Weston employees took photographs memorializing their theft of the copper wire in question. It also is not lost on this Court that the claim before this Court **is not one of theft or conversion; rather is one of negligent supervision**. Nonetheless, MSP would have this Court *infer – from a photograph taken by Weston employees, memorializing work done by Weston* -- that Weston was not supervising its employees whose work it was photographing and those photographs show Weston employees engaging in theft. The photographs, on their face, do not support MSP's argument; Weston has provided relevant and otherwise admissible evidence to show the work depicted in the photos was legitimately performed pursuant to the contract; MSP has not presented *otherwise admissible* evidence to dispute Weston's evidence. Thus, MSP has failed to meet Weston's evidence and the

-11-

*argument and inference* suggested by MSP is not sufficient to meet its burden. As neither the photo, on its face, nor Mr. Moffett's affidavit controverts the sworn evidence submitted by Weston, and as mere argument is not sufficient, and, as MSP overreaches when it argues the photos themselves depict Weston is "removing copper wire from the facility,"[7] this Court finds Weston prevails on this portion of its motion.

MSP, also, however, seeks damages for loss of, or damage to, *its property*, which presumably would include the conduit itself. This Court is given to understand from the record, the conduit in question was plastic, and the value of the lost or damaged conduit is not known to the Court.[8] Again, the sworn testimony presented by Weston attests it was necessary to cut and remove a certain amount of conduit and copper wire in the performance of its work under the contract. MSP presents no otherwise admissible *evidence* to dispute that testimony, rather, *argues* the cutting of conduit and the removal of any conduit or copper was not necessary to the performance of Weston's work. The only *evidence* MSP presents in support of this *argument* is from Mr. Moffett, who as noted is not in a position to attest, from his personal knowledge, what work was or wasn't required under the contract, or was or was not performed. Also, as this Court has noted, the photos, themselves, do not show work which clearly is outside the scope of the contract, nor do they show work which is inconsistent with Mr. Bishop's testimony.

---

[7] Indeed, Weston subcontracted with a company called Southern Scrap to remove and dispose of all scrap metal accumulated during the performance of Weston's work. Weston was fully authorized by LDEQ to remove all scrap metal accumulated not only in demolishing the actual tanks, but also scrap metal from any materials which were torn down to gain access to the tanks to be demolished, with no provision made specifically for any cooper wiring which might have been a scrap by-product of Weston's completing the work it was contractually obligated to do.

[8] Were this Court to conclude there is a genuine issue of material fact only with respect to the loss of, or damage to, the conduit, this Court has question as to whether subject matter jurisdiction would exist in this case, as it is unclear to the Court whether the amount in controversy would be sufficient to maintain jurisdiction.

-12-

Pursuant to established jurisprudence,

[The parties'] burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence. We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted **evidence** of contradictory facts. We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. ...**[S]ummary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant**.

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*)(citations and internal quotations omitted) (emphasis added).

This Court concludes the evidence presented by MSP – the affidavit of Mr. Moffett – provides no otherwise admissible evidence or, at its very best, only a scintilla of evidence in support of MSP's argument as to either the reason for cutting certain parts of the conduit or the removal of certain copper wire and what the nature of Weston's supervision of its employees and subcontractors employees might have been. One can *attest* only to *that which is of his or her own personal knowledge*. Mr. Moffett was not privy to the relevant contract, as by his own admission was not present when Weston was on site working and thus, cannot know, of his own personal knowledge, whether certain conduit or copper wire would have had to have been cut and removed for the work to go forward. Indeed, because Mr. Moffett is not in a position to know what work Weston was to perform under the contract, or what work Weston actually did and why, there is no actual controversy presented by the evidence submitted to the Court by MSP and that presented by Weston in support of its motion. Therefore, this Court concludes MSP fails to sufficiently rebut the evidence presented by Weston on this point, and Weston must prevail on this issue.

-13-

## Paragraph 3

With respect to Paragraph No. 3, MSP presents "[p]hotographs obtained by MSP through discovery which show a Weston employee cutting the back off of a conduit elbow to remove copper wire from it.  This activity took place in an area of the plant in which no tank[s] [sic] are or were ever located."  This Court has reviewed the photographs in question.  One of the photographs has already been addressed by this Court in Paragraph No. 2 (the photograph of the two men standing by the tubes).  The second photograph is also of poor quality, but appears to depict an individual bending down between railings and holding something in his hands.  Although it is not clear what the man is holding, even if this Court were to assume the man is cutting the back off a conduit elbow, the photo, itself, does not show, nor can it, that the man shown is doing so "to remove copper wire from" the conduit; why the man might have been doing whatever it might be, cannot be determined from the photo alone.  Again, Weston has submitted otherwise admissible evidence to establish all work done by Weston, and *memorialized by Weston in photographs*, was necessary in order to complete the work required by the contract.  MSP has presented no otherwise admissible evidence to dispute this testimony and the photos, on their face, do not dispute that testimony. Therefore, this Court concludes MSP, again, has overreached with regard to the evidence it presents. The photographs themselves do not depict what MSP argues and thus, standing alone, are not evidence of the removal of copper wire from the conduit and removal of the wire from the facility by Weston employees when not being properly supervised – indeed they were being photographed, by Weston to memorialize the work they were doing – as argued by MSP.  The photographs are evidence only of the cutting of conduit and the fact the photos were taken by Weston employees as part of their pictorial evidence of completion of their contract argues *for*, rather than against, the

inference of proper supervision and the work being performed pursuant to the requirements of the contract as suggested by Mr. Bishop.

MSP, also, presents two affidavits referencing the photograph depicting a man bending down between railings and holding something in his hands. The first is the affidavit of Mr. Moffett, who states this photograph "depicts a Weston employee cutting through the back of a conduit elbow to remove copper wire from it;" Mr. Moffett further states there are no tanks in this area and that he has visited this area of the facility several times since Weston left the facility, and that the piece of conduit depicted in the photo remains present at the facility, however the copper wire inside the conduit has been stolen and is no longer present at the facility.[9]  Thus, Moffet purports to attest, again, to that of which he has no personal knowledge. However, Moffett does attest he has visited the facility since Weston left – although exactly when within the seven month loss window is not known, and the piece of conduit depicted within the photo remains at the facility, however the copper wire MSP argues was within the conduit is absent. If this court were to accept each of those facts, they do not dispute the sworn testimony of Mr. Bishop, and do not support the overreaching statement made by MSP as to the photos. Nor do those facts support even an inference – reasonable or otherwise, that Weston failed to adequately supervise its or its subcontractor's employees.

The second is the affidavit of John Adams, a superintendent with Turner Industries Group, LLC ("TIG"). TIG was hired by Weston to provide cranes necessary to lift certain tanks at the facility. Mr. Adams attests he was the TIG superintendent for the MSP/Weston job and all cranes at the site were operated by TIG personnel under his supervision. Mr. Adams attests he was

---

[9] *See* affidavit of Sid Moffett, attached as Echibit "B" to MSP's opposition to Weston's motion for summary judgment, Doc. 44, at ¶ 10.

responsible for making and/or approving decisions made with respect to the placement of cranes at

the site during the project performed by Weston.  Mr. Adams states the following:

> 5. ***I have been informed by counsel for MSP*** **that Weston claims it needed to remove piping and/or conduit from the area of the plant depicted in the photograph attached hereto as Exhibit A to place a crane there.**  I never instructed Weston that TIG needed to access this area to place a crane in it to accomplish the work TIG was contracted to do.  To my knowledge, no other TIG employee so advised Weston.  As site Superintendent for TIG, I would have been involved in all decisions regarding crane placement.

> 6. There was no need to remove piping and/or conduit to allow TIG to place a crane in the area depicted in Exhibit A because there were other areas of the facility that were freely accessible to TIG's cranes.  TIG never placed a crane in the piping and conduit depicted in Exhibit A and never needed to do so.[10]

(emphasis added.)

Again, this Court notes a witness can only attest to that of which he or she has personal

knowledge.  The noted statement of Mr. Adams foreshadows its fatal law – what Mr. Adams might

have been informed is hearsay unless the act of having been informed is relevant to the inquiry,

which in this instance, it is not.  Furthermore, in response to Mr. Adams's affidavit, Weston filed

a reply brief and submitted the affidavit of Gary Blacketter, Project Manager of the Crane and

Rigging Division of TIG, **and Mr. Adam's boss,** *who was responsible for bidding, negotiating, and*

*executing contracts for TIG.*  Mr. Blacketter attests **he was the person responsible** for negotiating

the details of TIG's subcontract with Weston for the MSP job, not Mr. Adams.  With respect to

Paragraph 5 of Mr. Adams's affidavit, Mr. Blacketter states Mr. Adams's statement is misleading,

"based on the fact that the statements therein **assume that Mr. Adams actively participated in the**

**discussions therein referenced.**" (emphasis added)  Mr. Blacketter goes on:

---

[10] *See* Affidavit of John Adams, attached as Exhibit "K" to MSP's opposition to Weston's motion for summary judgment, Doc. 44.

7.      All negotiations and **work scope discussions with Weston were with me**, and *did not include Mr. Adams*. **Weston's representatives suggested that TIG look at an alternate location for removing the H-10 vessel. Weston offered to remove a pipe rack to allow for crane access.** *Removal of the pipe rack would allow for the crane to get at a closer radius which would have provided access for a smaller crane.* **Ultimately, this work was removed from TIG's subcontract work scope,** *and Weston performed the work.*

8.      *At no time was Mr. Adams aware of the foregoing discussions and comments relative to possible removal of the pipe rack.*

9.      **I am John Adams's supervisor, and while it is true he generally is responsible and consulted with by the general contractor about crane placement, such discussions and consultations take place with him only when he was been directed by my office with respect to a certain crane location. Under these circumstances, there** *would have been no reason for anyone, whether with Weston or TIG, to discuss with John Adams anything about the removal of the pipe rack.*[11]

(emphasis added)

Again, Mr. Bishop has sworn conduit and wire would have had to have been removed for Weston to have performed its work.  Thus, again, MSP has attempted to rebut the evidence presented by Weston with evidence that does not and cannot controvert the evidence presented by Weston. Indeed, MSP has presented an affidavit which purports to attest to information *about which the affiant has no personal knowledge* and as such is not admissible under the Federal Rules of Evidence.  Weston has presented otherwise admissible evidence that the conduit and copper wire in question needed to be removed in order for Weston to perform its work under the contract for a variety of reasons, from making room for an excavator, to making room for a crane.  To rebut this evidence, MSP presents the testimony of two individuals – Mr. Moffett and Mr. Adams – neither

---

[11] *See* Affidavit of Gary Blacketter, attached as Exhibit 5 to Weston's reply brief, Doc. 60 (emphasis added).

of whom were in a position to know whether conduit needed to be cut and certain amounts of wire removed in order for Weston to perform its work under the contract.  Therefore, on the issue of whether it was necessary for conduit and wiring to be removed so that Weston could perform its work under the contract, the evidence presented by the parties on this question are the two photos, themselves, which on their face, do not depict what MSP argues, and the sworn testimony by Weston that the work shown was necessary for Weston to conduct the work it was obligated by the contract to perform, and the fact that Weston, itself, had employees on site photographing the work actually done and it is upon those photos which MSP argues – all of which do not support an inference the photos depict a failure to supervise those same employees.  No "evidence" has been presented by MSP to refute the evidence of Weston; no evidence has been presented by MSP which controverts Weston's evidence.  Furthermore, the individuals who signed the argued affidavits had no personal knowledge of the possibly pertinent, relevant facts at issue, i.e. neither was in a position to know whether it was or was not necessary to remove conduit and wiring in order for Weston to do its work under the contract or whether Weston did not adequately supervise its employees and subcontractors.  Therefore, this Court concludes MSP has again overreached and has failed to present sufficient evidence to create a genuine issue of material fact as to the evidence presented by Weston on this issue, and thus, Weston must, again, prevail.

### Paragraph 4

With respect to Paragraph No. 4, MSP presents "[p]hotographs obtained by MSP through discovery which show conduit intact while Weston was present at the facility (and actually show Weston personnel in the background as a means of dating these photographs) coupled with other photographs of the facility taken by LDEQ immediately after Weston left the facility which show

that conduit at the facility has been cut through to remove copper wire and is being held together with pipe clamps after Weston left." First, this Court notes MSP has, again, referred this Court to two photographs as "evidence," which cannot show what is argued. MSP argues the first photograph[12] "shows that conduit running along the warehouse building intact and has not been cut while Weston employees are working at the MSP facility." MSP then directs this Court's attention to a second photograph,[13] which MSP argues "shows that the very same conduit run that was intact when Weston arrived at the facility has been cut and is being held together with pipe clamps shortly after Weston left the facility."

This Court has reviewed the two photographs referenced above and notes once again the photos do not depict what MSP argues they depict. Indeed, on their face alone, it is not clear whether the photographs are photographs of the same location as argued; furthermore, even if the Court were to assume the photographs are of the same location, they are taken from two different angles, and, thus, it is not clear the conduit depicted in the first photograph is the same conduit depicted in the second photograph. In the first photograph, there is a building on the left side of the photo, along with a piece of heavy equipment parked in front of what appears to be a tank. To meet MSP's argument, Weston submits the sworn testimony of Kelvin Bishop, who testified the first photo depicts a shed that was being removed because it was "getting in the way of Tank 10."[14] The second photograph shows a building behind a gate. With respect to the second photograph, Ms.

---

[12] This photograph is attached as Exhibit 7 to the deposition of Kelvin Bishop , which is Exhibit "E" to MSP's opposition to the motion for summary judgment, Doc. 44.

[13] The second photograph is attached as Exhibit 4 to the deposition testimony of Vicki Hadwin, which is Exhibit "F" to MSP's opposition brief, Dr. 44. Ms. Hadwin's role in this litigation has not been sufficiently explained to this Court.

[14] *See* deposition of Kelvin Bishop, attached as Exhibit "E" to MSP's opposition brief, at po. 66, ll. 12-22.

Vicki Hadwin testified the photo depicts a building known as the "warehouse shop." Although Ms. Hadwin testified to the presence of conduit running up the side of this building, Ms. Hadwin does not establish, as MSP argues, that conduit appearing in the first photograph – which MSP argues has not been cut – is the "very same conduit run that was intact when Weston arrived at the facility has been cut and is being held together with pipe clamps shortly after Weston left the facility."

Again, it is unclear from the photos, themselves, whether the building in the two photographs is the same building, and whether any conduit that might appear in both photographs is "the very same conduit," as MSP argues. Indeed, the deposition testimony provided does not explain or establish that the "shed" in the first photograph is the same structure as the "warehouse shop" in the second photograph, or otherwise establish that "the very same conduit run that was intact when Weston arrived at the facility has been cut and is being held together with pipe clamps shortly after Weston left the facility." Therefore, notwithstanding what relevance such a finding might or might not have, this Court concludes, again, MSP has overreached with regard to the "*evidence*" it submits to support its *argument*. Again, without *otherwise admissible evidence* to support its *argument*, mere argument is not sufficient. This Court notes the photos, themselves, on their face and standing alone, do not support *the argument* MSP makes. Thus, as MSP has presented no *evidence* to meet the *evidence* presented by Weston as to the nature of the photos, and establish a controversy, dispute or evidence of a genuine issue as to a material fact, this Court concludes MSP has not met its burden to meet Weston's argument and evidence on this point, and again, Weston must prevail.

### Paragraphs 7 and 8

With respect to Paragraph No. 7, MSP presents "[t]he deposition testimony of the Risk Manager and guards from a neighboring facility stating that they observed men moving about the

MSP site at night while Weston was there and using the work trailer that Weston had placed on site despite the fact that Weston claims it was only performing work during the day time hours at the MSP facility." In Paragraph 8, MSP presents "[c]opies of the log sheets maintained by guards from a neighboring facility documenting the after hours presence of men at the MSP site who were coming and going from a work trailer that Weston had placed on site." However, MSP's argument is misplaced. This Court concludes MSP has failed to establish, as is its burden at trial, *that Weston had a legal obligation to supervise its employees, is subcontractor's employees, or the site **after normal working hours***. **It is not lost on this Court that MSP has not brought a claim for conversion, or theft by Weston or Weston employees, rather MSP argues *negligent supervision*.** However, it is clear from the contract, **Weston had no obligation to supervise the site, or for that matter, its employees, after working hours, and the law does not otherwise impose such a duty. Thus, what might or might not have occurred after hours, might or might not have been theft, or conversion** – and this Court will in no way speculate on those matters – **however, those claims are not before this Court.** *MSP claims **Weston failed to supervise its employees and the site after working hours***, **but fails to establish the existence of *any legal duty* for Weston to supervise its employees, subcontractor's employees or the site after working hours.** Weston employees have testified the workday typically ended at 5:30 p.m.; what happened or did not happen on the site after that point in time and what any purported Weston employee or subcontractor employee might or might not have done after that point in time **is not relevant to the actual claim before the Court – one of negligent supervision. MSP fails to demonstrate, either pursuant to the contract or under the general tort law, that Weston had a supervisory obligation to the site or its employees or subcontractor's employees, after-work hours.** Therefore, even if the Court were

to assume, based on the foregoing testimony, that Weston employees were at the facility after hours and took the copper wire, such, perhaps might be evidence of theft, however, MSP has offered no evidence whatsoever, contractual or otherwise, that Weston *had a duty to supervise its employees or any other workers after 5:30 p.m.;* the claim made by MSP against Weston is <u>not one of theft, but one of negligent supervision, Weston had no legal obligation to supervise after 5:30 p.m.</u>

### Paragraphs 1, 5, 6 and 9

Finally, this Court addresses Paragraphs 1, 5, 6, and 9.  In Paragraph 1, MSP presents "[t]he deposition testimony of a former manager of the MSP facility who testified that he toured the MSP facility immediately prior to the point at which Weston arrived and observed the facility to be intact, thus negating any allegation that the thefts and vandalism occurred prior to Weston's arrival."  In Paragraph 5, MSP presents "[t]he deposition testimony of a Master Electrician who worked at the MSP plant and who stated that, based on his personal experience in installing copper wire at the plant, pulling the thousands of feet of heavy copper wire that were stolen from the facility out of the conduit in which it was housed was a massive undertaking that could not have been accomplished without the sort of heavy equipment that Weston had on site."  In Paragraph 6, MSP presents "[t]he deposition testimony of an employee of a neighboring facility stating that he would have immediately noticed and become suspicious if anyone other than Weston began moving heavy equipment to and from the MSP facility but that Weston was able to do so without arousing suspicion due to its contract with LDEQ."  In Paragraph 9, MSP presents "[t]he deposition testimony of Weston's own expert who stated that it would have taken several months to remove the massive amount of copper wire that was stolen from the MSP facility coupled with the affidavit of the MSP facility's caretaker who swears that he inspected the facility regularly and never observed anyone

-22-

other than Weston there for that length of time." This Court concludes none of the foregoing categories of "evidence" create a genuine issue of material fact *that Weston failed to supervise its employees or subcontractor's employees during a time when Weston had the duty to supervise*, nor does the "evidence" presented raise the reasonable inference that Weston negligently supervised its employees during working hours. While the foregoing evidence might, potentially, create a possible inference of theft or conversion of the copper wire, **MSP has not pled theft or conversion** against any one specific individual or employee of Weston. Rather, MSP has pled Weston failed to properly supervise its employees during a time when Weston had the legal obligation to do so. None of the foregoing categories of information presented by MSP address the elements necessary to sustain MSP's burden with respect to its claim for *negligent supervision*. Consequently, this Court concludes the evidence contained in Paragraphs 1, 5, 6, and 9 is not sufficient to create a genuine issue of material fact as to the issues and evidence presented and argued by Weston, and again, Weston must prevail.

   **b.**  **MSP's "New Evidence"**

   In addition to the ten categories of evidence argued by MSP to defeat summary judgment, and addressed by the Court, MSP, also, offers purportedly "new evidence" to defeat Weston's motion, in the form of a photograph "that depicts piles of conduit torn down by Weston employees and lying on the ground while Weston was present at the facility with copper wire protruding from the conduit." MSP argues this photograph "establishes that Weston employees *removed copper wire from the facility*." (emphasis added.) MSP yet again overreaches in its argument. The photograph again, is one taken by Weston to memorialize its work done pursuant to the contract; the photo depicts conduit and copper wire protruding from a conduit in a pile on the ground. The photograph

does not depict or "establish" that *Weston employees removed copper wire "from the facility."* The photograph only depicts conduit and copper wire placed in a pile on the ground for whatever purpose, and for whatever reason; MSP presents no *evidence* as to why the conduit and wire are there. *Weston* presents *sworn testimony* that a certain amount of conduit and copper wire had to be removed in order for Weston to do its work under the contract of demolishing the tanks and itself took photographs depicting that having been done to memorialize its work pursuant to the contract; and Weston contracted with a third party to, in fact, remove from the site, scrap metal, including conduit and wire. MSP disputes Weston's sworn testimony only *in argument;* no contradictory or otherwise admissible evidence has been presented to contradict, dispute, or call into question the admissible evidence presented by Weston. Again, Weston has presented sworn testimony that in performing its work, certain amounts of conduit and wire has to be removed and were thrown into the scrap metal bins with all other scrap metal and that this scrap metal was removed from the premises by a scrap metal company that was contracted to do so; the photo supports, rather than contradicts, this testimony. To meet this evidence, MSP argues the affidavits of Mr. Moffett and Mr. Adams, two individuals who again, are not in a position to have personal knowledge and/or to contradict the evidence presented by Weston. Therefore, this Court concludes MSP's "new evidence" is not sufficient to rebut Weston's summary judgment evidence or to create a genuine issue of material fact as to Weston's evidence.

In making his findings, this Court notes the magistrate judge heavily relied on two factors that this Court addresses specifically herein. The first was the fact the St. Mary Parish Sheriff's investigation of the theft of the copper wire did not result in the arrest of any Weston employee or subcontractor. This Court notes, however, the standard sufficient to bring a *criminal* action against

-24-

Weston is a different standard than that employed to impose *civil* liability on Weston for the loss of the copper wire. Therefore, this Court concludes the fact that no criminal charges against Weston resulted from the *criminal* investigation does not, itself, establish an absence of evidence on the civil inquiry – i.e. that Weston might have *negligently supervised* its employees allowing them to take the copper wire. MSP has presented *no contravening evidence* to dispute the sworn testimony presented by Weston that it did supervise its employees, and, in fact, memorialized that supervision by the very photographs now relied upon by plaintiff to argue the contrary. As noted, the photos relied upon, *on their face*, do not and cannot, alone, support MSP's argument. Weston's evidence establishes Weston performed work pursuant to its contract and the photos arguably memorialize that legitimate work. MSP presents no *otherwise admissible evidence* to contradict the evidence under even the lesser civil standard. Thus, MSP has failed to meet Weston's evidence and argument or present evidence of a genuine issue as to any material fact as to the actual claims made by MSP against Weston.

The magistrate judge, also, relied heavily on the fact that there was a seven-month gap of time between the time Weston left the facility after having completed its work in March 2008, and the time the loss of the copper wire was discovered in November 2008. Without additional information, this Court cannot know why the amount of time passed before MSP noticed the loss of the wire, thus, diminishing the significance of the time lapse. Indeed, it appears the facility in question was not operating during this time period, therefore, it is equally conceivable, if not equally likely, MSP simply did not have sufficient manpower on the site to notice the loss of the copper wire until November 2008, as it is not known if there was an inspection of sufficient nature of the site after Weston completed its work, but before seven months had elapsed, to recognize the loss.

-25-

However, the inescapable reality is that it is not known what happened to the copper wiring – whether it was taken at night during the period Weston was on site, working during the day – a time for which Weston owed no supervisory obligation – or whether the wire was taken in the seven-month period after Weston left the site by some third party, or whether Weston employees took the copper wire off site during daylight and working hours, as argued by MSP, or whether a heretofore unargued scenario might explain the loss. However, it *is* known MSP will, at trial, have the ultimate burden to establish, not that the copper wire was the subject of theft, or conversion, *but that Weston failed to adequately supervise its contractors and subcontractors during the time period when the law would impose such a duty on Weston, i.e. working hours while Weston was performing its work under the contract, and that its failure to supervise resulted in loss to MSP, i.e. the loss of the copper wiring and damage to the conduit.* MSP has presented no otherwise admissible evidence to establish Weston failed to supervise its employees or subcontractor's employees, and/or that failure resulted in loss to MSP, i.e. the loss of the copper wire and damage to the conduit. Rather, Weston has presented evidence it did adequately supervise its employees and memorialized that supervision and work by photographs. MSP presents *no evidence* to the contrary, rather relies on argument. MSP's argument would have this Court *infer* that because Weston was onsite when the copper wire was in place and seven months after Weston left the site, the wire was found to be gone, this Court should find Weston failed to supervise its employees or subcontractors while on site working, and that failure to supervise resulted in their taking the wiring during working hours. The fact that the wire was on site before Weston arrived, and that some seven months later the copper wiring was found to be gone, does not support a finding *Weston failed to supervise its employees or subcontractors and Weston's employees took the wiring during working hours.*

-26-

Also, of critical importance to this Court's ruling is the fact that the claim pled by MSP against Weston is one for *negligent supervision.* By presenting this Court with Weston's own photographs taken to document and memorialize the progress of the work undertaken by Weston, this Court notes, MSP is presenting this Court with evidence of Weston's *purposeful, intentional acts.* To the extent that MSP is arguing Weston's actions were purposeful and intentional, they are not "negligent." If MSP is arguing Weston intentionally stole the copper wire and photographed themselves doing it, *MSP has not pled such intentional and purposeful acts.* Rather, MSP has pled the tort of *negligent supervision.* To establish a negligent breach of Weston's supervisory obligation, MSP must allege and prove a breach *of that obligation,* i.e., substandard conduct on the part of Weston in the supervision of its employees. Thus, even if this Court were to assume the evidence presented by MSP in support of its claim might, potentially, be argued to be, perhaps, evidence *of theft* of the copper wire, *MSP has not pled theft or conversion of the copper wire* against Weston. Indeed, inasmuch as MSP alleges Weston's employees *cut* conduit and *stole* copper wiring, particularly at night, the nature of that evidence and argument is not one of *negligence* at all; rather argues an intentional or criminal act, which is not before this Court. MSP had the freedom to chose the claims it wished to plead before this Court and MSP chose to plead *only negligent supervision.*

The magistrate judge stated in his Report "it is *equally true,* if not more, likely that the claimed losses and damages were the result of vandals and trespassers." This Court notes on its de nova review, it, properly, does not and cannot weigh evidence at the summary judgment stage, however, if the movant can establish the claimant *has no evidence* to support one or more of the essential elements of their claim and the claimant cannot present *evidence* to establish a genuine issue of material fact as to that point, the movant must prevail; such is the situation before this Court.

-27-

Thus, considering the foregoing, this Court concludes Weston has presented admissible evidence to establish the absence of any otherwise admissible evidence as to each of the essential elements of MSP's claim of negligent supervision and further concludes MSP has not presented evidence to rebut Weston's evidence and argument that there is an absence of evidence that Weston negligently supervised its employees and that negligent supervision resulted in damage or loss to MSP, i.e. damage to the conduit and loss of the copper wire. Considering the foregoing, Weston's motion for summary judgment seeking dismissal of MSP's negligent supervision claim is GRANTED and all claims against Weston are DISMISSED WITH PREJUDICE.

As the claims asserted by MSP against Commerce and Industry Insurance Company and National Union Fire Insurance Company of Pittsburgh, PA are asserted against the foregoing in their capacities as liability insurer and excess liability insurer of Weston, due to the dismissal of the claims in their entirety against Weston, plaintiff's claims against Commerce and Industry Insurance Company and National Union Fire Insurance Company of Pittsburgh, PA are DISMISSED WITH PREJUDICE.

## V.    Conclusion

For the reasons stated herein, the Motion for Summary Judgment [Doc. 39] filed by defendant Weston Solutions, Inc. is GRANTED in its entirety.

IT IS FURTHER ORDERED that plaintiff's claims against Commerce and Industry Insurance Company and National Union Fire Insurance Company of Pittsburgh, PA are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that the parties shall submit a Judgment, approved as to form, within ten (10) days of the date of this Ruling.

THUS DONE AND SIGNED in Lafayette, Louisiana on this ___14___ day of December 2010.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE

-29-